UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-25329-CV-GAYLES/REID
CASE NO. 15-20802-CR-GAYLES

**DAMASO RIVERA FONSECA,**

    Movant,

v.

**UNITED STATES OF AMERICA,**

    Respondent.

_____/

**UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO MOVANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE AND MEMORANDUM OF LAW**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby responds in opposition to Movant Damaso Rivera Fonseca's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence and Memorandum of Law (DE 1).[1] Movant sets forth four grounds in support of his Motion. His first claim is based on the recent Supreme Court decision in *Rehaif v. United States*, 139 S. Ct. 2191 (June 21, 2019). His remaining three claims pertain to purported violations of Movant's Sixth Amendment rights based on ineffective privately retained trial counsel and appointed appellate counsel. Specifically, Movant contends that his trial counsel labored under a conflict of interest and failed to adequately explain to him that he had the option to resolve his case without a trial, and to explain the sentencing guidelines and complexity of the government's case. He also alleges that his appellate counsel failed to raise on appeal the district court's decision to sentence him above the

---

[1] References to docket entries in the underlying criminal case 15-CR-20802-DPG will be denoted as "CR-DE __." References to docket entries in the instant civil case will be denoted as "DE __."

government's recommendation and the United States Sentencing Guideline ("USSG") advisory guideline range (DE 1 at 4-8).

As set forth below, for Movant's *Rehaif* claim, he is unable to overcome his procedural default and, even if he were, any *Rehaif* error was harmless since there was ample evidence that Movant knew of his restricted status at the time of his firearm possession. Moreover, Movant received effective assistance of counsel in every stage of the proceedings, there was no conflict of interest, and his sentence was not subject to collateral attack. As for his purported ineffective assistance claims, these also lack merit because Movant failed to demonstrate either that counsel's performance was constitutionally deficient, or that the purportedly constitutionally deficient performance prejudiced him. Instead, the record conclusively establishes that Movant was competently, energetically, and effectively represented by his counsel of choice at trial, as well as by his appellate lawyer on appeal. Because the undisputed record reflects that Movant has failed to show any basis upon which this Court may vacate, set aside or correct his sentence, his Motion should be denied without a hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2015, a federal grand jury in the Southern District of Florida returned a three-count Indictment charging the Movant with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. 924(c)(1)(A) (Count 3) (CR-DE 6). The 18 U.S.C. § 924(c) count was predicated upon the possession with intent to distribute a controlled substance charge in Count 2 (*Id.*). After Movant was arrested, the government successfully sought pre-trial detention. Movant was present for the detention hearing, during

which time the Government explained that Movant was facing a significant sentence of approximately 210 to 262 months (CR-DE 34, at 11).

Extensive pre-trial litigation ensued. On April 26, 2016, the district court denied Movant's motion to suppress (CR-DE 97). The court also denied Movant's motion *in limine* in which he sought to exclude statements that his girlfriend Bridgette Newman made to a Walgreens manager prior to Movant's arrest, which were damning to Movant (*Id.*). Movant then proceeded to a jury trial (CR-DE 64). After a highly litigated trial, the jury deliberated for multiple days and at one point, sent out a note stating "we are deadlocked" (May 3, 2016 Transcript, CR-DE 102 at 5; *see also* CR-DE 72). Upon receiving a modified Allen Charge, the jury continued deliberations (*Id.* at 7-8). Thereafter, the jury returned a verdict finding Movant guilty on all counts (CR-DE 73). After the verdict was announced and the jury dismissed, the district court noted that "both sides did a good job on the case. Mr. Fonseca, obviously, you are undoubtedly disappointed from the result but it wasn't from a lack of effort from your attorneys. I think both of them did a great job on your behalf" (CR-DE 102 at 14-15). The district court then explained to Movant the process of preparing a presentence investigation report ("PSI"), reviewing it, and raising any objections and other motions prior to sentencing, to which Movant specifically confirmed his understanding of the process (*Id.* at 13-14).

The United States Probation Office ("USPO") prepared a PSI that detailed Movant's extensive criminal history that began when he was twelve years old (CR-DE 78). Movant's adult criminal record included convictions for armed robbery, carjacking, delinquent in possession of a firearm, introducing a shank while in jail, grand theft auto and robbery by sudden snatching (PSI ¶¶ 28-35). Due to the above-detailed offenses, Movant was incarcerated multiple times prior to the instant case, including for a ten year period from approximately March 27, 2005 until May 1,

2015 (PSI ¶ 34). As set forth in the PSI, at the time of his conviction in the instant case, Movant also had a pending felony charge in Broward County, Florida stemming from a drug arrest just two days before his instant offense (PSI ¶ 44). The PSI also included multiple enhancements, including a two-level enhancement pursuant to USSG § 3C1.1 because Movant willfully obstructed the administration of justice during the course of the prosecution when repeatedly directed his girlfriend Bridgette Newman, a witness to Movant's criminal offenses, to remain quiet and not remember the incident (PSI ¶ 23). Movant filed objections to the PSI but did not raise a *Rehaif* objection (CR-DE 78, 80).

On August 1, 2016, after considering the final PSI, the advisory guideline range, the statutory factors set forth in 18 U.S.C. 3553(a), and the objections and arguments from all parties, the district court found that Movant had a total offense level of 26 and a criminal history category of IV (CR-DE 103:34). As a result, his advisory sentencing guideline range was 92 to 115 months' imprisonment as to Counts 1 and 2, plus the mandatory minimum of 60 months' imprisonment as to Count 3, to run consecutively (*Id*. at 34-35). The government recommended that Movant be sentenced to "***at least*** 175 months' imprisonment" (CR-DE 103:35) (emphasis added). Ultimately, the district court sentenced Movant to 235 months' imprisonment, comprised of 115 months for Counts 1 and 2, to be served concurrently, and 120 months for Count 2, to be served consecutively (*Id.* at 48; CR-DE 88). This was below the statutory maximum.

Movant timely filed an appeal (*See* CR-DE 89). Thereafter, his judgment of conviction was affirmed in a written, unpublished opinion. *See United States v. Fonseca,* 727 F.App'x 985 (11th Cir. March 7, 2018). He then filed a petition for certiorari in the Supreme Court, which was also denied on January 7, 2019. *See Fonseca v. United States,* 139 S. Ct. 846 (2019).

On December 30, 2019, Movant timely filed the instant Motion, to which the government

now timely responds (CR-DE 109).

## ANALYSIS AND ARGUMENT

### I. Movant's *Rehaif* claim is procedurally barred and fails on the merits.

Movant first asks the Court to vacate his sentence in light of *Rehaif*, because his "indictment fails to state a federal crime" and thus both his Indictment and conviction are "constitutionally invalid" (DE 1-1: 2, 26). The Court should deny his claim because it is procedurally barred and fails on the merits.

In *Rehaif*, the Court held that, in a prosecution for possession of a firearm by a restricted person in violation of 18 U.S.C. §§ 922(g) and 924(a), the government must prove both that the defendant knew he possessed the firearm and that he knew he belonged to the relevant category of restricted persons (in this case, that he had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year). The Supreme Court has made clear that a defendant may properly claim in a § 2255 motion that, based on a court decision that resulted in a change in the law after affirmance of his conviction, his "conviction and punishment were for an act that the law does not make criminal." *Davis* v. *United States*, 417 U.S. 333, 346 (1974). Because *Rehaif* narrows the "class of persons that the law punishes" under Sections 922(g) and 924(a), it is retroactive on collateral review. *See Welch* v. *United States,* 136 S. Ct. 1257, 1267 (2016). Further, Movant timely seeks to raise his *Rehaif* claim within one year, under Section 2255(f)(3).

While the Indictment did not allege, and there was no finding, that Movant was aware of his status as a convicted felon, Movant did not preserve a knowledge-of-status objection in the district court or on direct appeal. As a "general rule," claims not raised at trial or on direct appeal "may not be raised on collateral review." *Massaro* v. *United States*, 538 U.S. 500, 504 (2003). Accordingly, Movant procedurally defaulted this claim. *See Wainwright* v. *Sykes*, 433 U.S. 72,

5

85-86 (1977) (claim defaulted when no contemporaneous objection was lodged at trial); *Murray* v. *Carrier*, 477 U.S. 478, 490-492 (1986) (claim not raised on direct appeal is procedurally defaulted).

To overcome this procedural default, Movant must either show both "cause" for the default and "actual 'prejudice'" from the asserted *Rehaif* error, or that he is actually innocent. *Bousley* v. *United States*, 523 U.S. 614, 622 (1998) (citations omitted). While binding precedent foreclosed the position adopted by the Court in *Rehaif*, *see United States v. Jackson*, 120 F.3d 1226 (11th Cir. 1997), "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousely*, 523 U.S. at 623. While a defendant can establish cause for not bringing a "claim that 'is so novel that its legal basis is not reasonably available to counsel,'" *id.* at 622-623 (quoting *Reed* v. *Ross*, 468 U.S. 1, 16 (1984)), the question presented in *Rehaif* was thoroughly and repeatedly litigated in the courts of appeals over the last three decades. As such, it does not qualify under the novelty exception and Movant cannot establish cause. Cf. *id.* at 622 ("Indeed, at the time of petitioner's plea, the Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession.'" (citations omitted)).

Nor can Movant establish actual prejudice or make a threshold showing of "actual innocence."[2] The "actual innocence" exception requires a defendant to show that it was "more likely than not that no reasonable juror would have convicted him" had the district court correctly instructed the jury and given the government the opportunity to adduce evidence of the omitted

---

2 For the same reason the Movant cannot establish actual innocence, he cannot establish actual prejudice from his failure to timely raise a knowledge-of-status objection. Had the Movant timely raised that objection in the district court, the district court would have been able to make the requisite findings as to the Movant's knowledge-of-status based on the ample, undisputed evidence in the Movant's PSI, as discussed infra.

element.  *Schlup* v. *Delo*, 513 U.S. 298, 327-328 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousely*, 523 U.S. at 623.  Accordingly, the Court is not limited to the trial record when adjudicating a claim of actual innocence.  *See Schlup*, 513 U.S. at 328 ("The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.") (internal quotation omitted).

In this case, Movant cannot establish his actual innocence because there is substantial evidence that he knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year prior to his firearm possession in this case, and was not permitted to possess a firearm.  Prior to the instant case, Movant had been convicted of numerous felonies, including being a delinquent in possession of a firearm (PSI ¶¶ 28-35).  Additionally, Movant was sentenced to multiple separate prison sentences prior to the offense conduct in this case, for serious felonies that were each longer than a year.  Notably, he was released from prison in May 2015, just five months before the instant offense, after serving a decade in prison (PSI ¶ 34).

Moreover, ***Movant told law enforcement that he knew that he was not permitted to have a firearm because he was a convicted felon***.  Specifically, Movant was arrested in the instant case on October 5, 2015, after law enforcement found him in a van outside of a Walgreens in Aventura, Florida with a loaded AR-15 gun, drugs, cash and paraphernalia.  Thereafter, while being transported to the Federal Detention Center, Movant stated to law enforcement that he "recognized that he is a felon who cannot possess firearms, but stated that he would always have a gun because it was better to with a gun than dead" (PSI ¶ 8; CR-DE 103:39).  Movant then "admitted to purchasing the firearm on the street" (*Id.*).

7

Even if Movant did not procedurally default his *Rehaif* claim, then he would bear the burden of establishing error on collateral review. *See In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016) (collecting cases). To obtain relief under Section 2255, Movant must identify "a fundamental defect which inherently result[ed] in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill* v. *United States*, 368 U.S. 424, 428 (1962). To succeed on a knowledge-of-status objection, Movant would need to carry his burden of demonstrating that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht* v. *Abrahamson*, 507 U.S. 619, 637-638 (1993) (internal quotation omitted); *Ross* v. *United States*, 289 F.3d 677, 682 (11th Cir. 2002). Where, as here, evidence exists from which a rational juror could have inferred that a defendant knew of his status at the time of his firearm possession, he cannot establish "substantial or injurious effect" on the outcome of the proceedings below. Accordingly, even if the procedural default bar did not apply, Movant would still be unable to satisfy his burden on the merits of his *Rehaif* claim.

## II. Trial Counsel Was Not Ineffective Because There Was No Conflict of Interest

Next, Movant claims that Chris DeCoste, one of his two privately retained trial counsel of choice, was ineffective because his fees were paid for by Movant's girlfriend Bridgette Newman, and thus, counsel's loyalty was to her.[3] Movant alleges, without any supporting evidence, that this led to counsel deciding not to call Newman as a witness at trial. As a result, Movant speculates that DeCoste's "external loyalty" caused Movant to suffer a violation of his Sixth Amendment rights (DE 1-1, at 34). His conflict of interest claim must fail because neither the facts

---

3 Movant was also represented at trial by privately retained counsel Tara Kawass. However, Movant apparently took no issue with the caliber of her representation, as his Motion does not allege any ineffectiveness on her part.

nor the law supports his Motion.

First, for Movant's claim to survive, he must establish that an "actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "The mere possibility of a conflict," however, "'is insufficient to impugn a criminal conviction.'" *Burden v. Zant*, 24 F.3d 1298, 1305 (11th Cir 1994) (*quoting Cuyler*, 446 U.S. at 350). That is, Movant must prove "an actual conflict." *Zant*, 24 F.3d at 1305. He cannot meet this burden. Movant has done nothing more than speculate that Newman, who was a witness to Movant's crimes, was "on standby" and would have testified "for the defense that she was high on drugs the day of the arrest and that [Movant] did not intend to rob anyone nor use the firearm," but "it is unknown" why defense counsel did not call her, "although she was paying his fees" (*Id*. at 44). This is not enough for relief, because even if Movant's allegations that Newman paid his attorney fees were true, as the Eleventh Circuit made clear in *United States v. Tobon-Hernandez*, "the payment of legal fees by a third party does not automatically rise to the level of a conflict of interest." 845 F.2d 277, 281 (11th Cir. 1988).

Moreover, two additional facts further undercut Movant's Motion. First, Movant was initially assigned a federal public defender, but then he specifically petitioned the district court to substitute counsel so that DeCoste could represent him (CR-DE 27). Second, Movant's Motion implies that the purported conflict exists, in part, because DeCoste represented Newman on a related state drug matter that filed on October 5, 2015, and dismissed on November 4, 2015 (DE 1-1 at 43). However, the record shows that he did not. Public defender Matthew Hier represented Newman in that state case. *See* Miami-Dade Court Case No. F-15-020642.

Movant's Motion should also be denied because it fails to establish that a conflict actually existed. And, even if, *arguendo*, the court were inclined to find that, as a factual matter, a conflict

existed, the Motion still fails because he cannot show any "specific instances in the record to suggest an actual impairment of [counsel's] interests," *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (citation omitted). That is, he cannot meet his burden of establishing some plausible - and reasonable - alternative defense strategy or tactic that might have been pursued that was not pursued because of the conflict. *Id.* at 860 ("In other words, [petitioner] must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."). To show that defense counsel's strategic choice was unreasonable, Movant must establish that no competent counsel would have made such a choice. *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998). There is a strong presumption that the challenged action – not calling Newman as a defense witness – constitutes sound trial strategy. *Chateloin v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1998). The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel. *Blanco v. Singletary*, 943 F.2d 1477 (11th Cir. 1991).

Here, defense counsel's decision not to call Movant's girlfriend at trial represents a reasonable tactical decision based on the jury's likely estimation of Newman's credibility, her exposure to cross-examination, and other constitutionally permissible considerations. As the record in this case makes clear, the government actually sought to have Newman testify at trial against Movant, and served her with a subpoena to do so (CR-DE 103:30-33). However, Newman failed to comply with the government's subpoena, did not show up to court, and ultimately retained counsel in connection with the matter (*Id*). Newman also made incriminating statements as to Movant prior to his arrest, which defense counsel sought, but failed, to have fully excluded from trial (CR-DE 49 at 5). Furthermore, as captured in a recorded jail call prior to the start of trial, Movant also specifically and repeatedly directed Newman to "black out" and "not remember" what

10

went on outside the Walgreens (CR-DE 83-2).   At sentencing, the district court agreed with both probation and the government that Movant obstructed justice by attempting to silence Newman and prevent her from testifying for the government, or alternatively, to perjure herself on the witness stand by "not remembering what was going on at the time" (CR-DE 103:27). Thus, defense counsel's decision to not call Newman as a witness was more than reasonable due to the potential fodder for cross-examination at trial.   And, to the extent that Movant sought to pressure Newman into presenting perjured testimony at trial, defense counsel did not render ineffective assistance of counsel by refusing to cooperate with this.   *See Nix v. Whiteside*, 475 U.S. 157 (1986); *Williams v. Kemp*, 846 F.2d 1276 (11th Cir. 1988); *Davis v. Singletary*, 119 F.3d 1471, 1475 (11th Cir. 1997).

Simply put, defense counsel's handling of this matter reflected sound and acceptable strategic choice, within the range of constitutionally acceptable representation, and did not negatively affect the outcome of trial.   If anything, it increased the likelihood that Movant would be found not guilty.   Accordingly, no evidentiary hearing is appropriate where, as here, it can be conclusively determined from the trial record that Movant was not denied the effective assistance of counsel.   *See Knight v. Singletary*, 50 F.3d 1539, 1547 n.21 (11th Cir. 1995).

### III.     Trial Counsel Effectively Counseled and Advised Movant of the Strength of the Government's Case and Possible Sentencing Outcomes

Third, Movant argues that his conviction should be set aside because, had his privately retained counsel of choice explained to him after his motion to suppress was denied both the strength of the government's case and the possibility of pleading guilty, Movant *might* have considered the possibility of a resolution without a trial (DE 1-1 at 37). This claim also lacks merit, and, for the reasons set forth below, should be denied without a hearing.

Movant's claim cannot overcome the stringent requirements for, and presumptions against,

a claim of ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, the defendant bears the burden of establishing by a preponderance of the evidence both that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000) (e*n banc*). The standard for establishing deficient performance is highly deferential, and the presumption of reasonableness is even stronger when the court is reviewing the performance of experienced trial counsel of choice, such as DeCoste. *See Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. 2005). A court need not address both prongs of *Strickland* if a defendant makes an insufficient showing on one of the prongs. *Strickland*, 466 U.S. at 697; *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004).

Here, Movant presents no contemporaneous evidence corroborating his post-hoc claim that he would have pled guilty but for counsel's alleged errors. Rather, Movant concedes that he was present at all times during a "detailed explanation" of the government's case on the record after the motion to suppress *(*DE 1-1 at 37*; see also* CR-DE 98 at 10). He also acknowledges that this explanation included details about the government's witnesses and exhibits (*Id*.). Movant further admits that his decision to proceed to trial was guided not only by his defense counsel, but also by his girlfriend (*Id.* at 46). Prior to trial, and per the district court's Order, Movant and his trial counsel signed a cover sheet reflecting that they had received, reviewed, and rejected the government's plea offer (CR-DE 11 at 3).

Given the above-detailed record, Movant fails to show either that his trial counsel's performance was deficient, or that Movant was prejudiced by a reasonable probability that any purportedly deficient performance by trial counsel affected the outcome of his case. Instead, the record reflects that Movant had an adequate basis to make a rational assessment of the evidence

prior to deciding to proceed with trial. Having made that decision after consultation with his girlfriend and his privately retained attorneys of choice, and being disappointed both with the verdict and with his sentence, Movant's claim is nothing more than a massive case of buyer's remorse, which does not amount to constitutionally deficient legal representation. The ultimate decision whether to accept a plea offer lies with Movant, who is the master of his defense, and there is no duty for a defense attorney to recommend or urge a client to accept a plea offer. *See Purdy v. United States*, 208 F.3d 41, 49 (2d Cir. 2000). As the record makes clear, by the time Movant elected to go to trial, he had received a detailed overview of the government's case and also had substantial experience with the criminal system due to his criminal history that spanned decades and involved numerous criminal proceedings.

Moreover, even if Movant's claim that defense counsel could have done more to tell him of the risks of going to trial were true, deficient performance is still not shown. *See, e.g., United States v. Goudie*, 323 F.Supp.2d 1320 (S.D. Fla. 2004) (rejecting magistrate judge's recommendation that counsel performed deficiently; even if counsel did not fully set forth risks and guideline parameters posed by trial, defendant knew enough to appreciate the seriousness of case and prospect of significant jail time); *United States v. Moore*, 2011 WL 818156 (5th Cir. 2011) (affirming denial of §2255 relief; attorney performance not deficient notwithstanding arguable failure to anticipate and advise on potential sentence-enhancements).

Finally, besides failing to establish *Strickland's* deficient-performance prong, Movant also fails to establish *Strickland's* prejudice prong. To show prejudice after a rejected plea offer, Movant must establish a reasonable probability that absent counsel's alleged ineffective assistance, he would have accepted the plea offer. *United States v. Lalani,* 2009 WL 465989 ** 2(11th Cir. 2009), citing *Diaz v. United States,* 930 F.2d 832, 835 (11th Cir. 1991). A bare conclusory and

unsubstantiated assertion is not sufficient to meet this requirement, or to warrant an evidentiary hearing. Here, Movant concedes that he received a detailed explanation of the strength and nature of the government's case (DE 1-1 at 37), only to then turn around and claim that he did not receive an explanation of the strength of the government's case nor know about "the possibilities of resolving the case without a trial" (*Id.* at 38). This constitutes nothing more than a self-serving and conclusory allegation of ineffective assistance, which is contradicted by the record and unsupported by other indicia of reliability necessary to require a hearing or further consideration. *Miller v. McNeil*, 2010 WL 2639591, *5 n.3, citing *United States v. Ammirato*, 670 F.2d 552 (5th Cir. 1982). Movant cannot satisfy either prong of the two-pronged *Strickland* standard. Accordingly, he is not entitled to relief on his claim that trial counsel rendered constitutionally ineffective assistance, and this third claim should be denied without a hearing.

### IV. Movant Was Represented By Effective and Competent Appellate Counsel

Lastly, Movant contends that his appellate counsel was ineffective for failing to raise certain issues on appeal because counsel "was aware that I wanted to appeal all aspects of my case" (DE 1-1 at 46), including Movant's contention that the district court's sentence of 235 months' imprisonment "clearly violated 18 U.S.C. § 3553 factors" (*Id.* at 40), and that the district court "abused its discretion when it sentenced Fonseca 60 months above the guidelines and the government's recommendation" (DE 1-1 at 46). Movant is not entitled to collateral relief as his meritless claim is both factually and legally flawed.

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009). As Movant concedes, the failure to raise an issue that is without merit "does not constitute constitutionally ineffective assistance of counsel" (DE 1-1 at 39). And, as Movant also concedes,

an effective appellate advocate is not required to raise every non-frivolous appellate issue. Rather, effective advocates "winnow out" weaker arguments even though the weaker arguments may be meritorious (DE 1-1 at 39; *see also Jones v. Barnes*, 463 U.S. 745 (1983) (holding that failure to raise an issue without merit does not constitute constitutionally ineffective assistance of counsel). It is well-settled that raising every single frivolous point on appeal is not a sign of effective assistance of counsel, and indeed, often has the effect of diluting the import of stronger points. *See Bolender v. Singletary*, 16 F.3d 1547 (11th Cir. 1994). If courts were to "second-guess reasonable professional judgments and impose on ... counsel" a duty to raise every conceivable argument, it would "disserve the very goal of vigorous and effective advocacy." *Barnes*, 463 U.S. at 753. Thus, where counsel has selected certain arguments to raise on appeal, it is extremely difficult to demonstrate that the winnowing process constitutes deficient performance. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting, with approval, *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Moreover, even if a meritorious issue was not raised by appellate counsel, this does not mean that counsel provided ineffective assistance of counsel. *See Payne v. United States*, 566 F.3d 1276 (11th Cir. 2009).

The reasonableness of appellate counsel's performance is an objective inquiry, and thus, does not require an evidentiary hearing on Movant's Motion *See Allen v. Secretary, Fla. Dept. of Correction*s, 611 F.3d 740, 760, n. 10 (11th Cir. 2010) ("An evidentiary hearing into counsel's subjective intent would be pointless because it does not alter our conclusion that his strategy was objectively reasonable"). An "ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation]. Therefore, where the record is

incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Grayson v. Thompson,* 257 F.3d 1194 (11th Cir. 2001); *quoting Chandler,* 218 F.3d at 1314 n. 15. Where "the evidence does not clearly explain what happened, or more accurately why something failed to happen, the party with the burden loses." *Romine v. Head,* 253 F.3d 1349, 1357 (11th Cir. 2001).

In this case, the record establishes that Movant was represented by experienced, competent and effective appellate counsel who timely filed an appeal in which he raised five separate issues, all of which had a greater likelihood of success than the one which Movant now claims should have been included (CR-DE 89). At sentencing, the government recommended that Movant be sentenced to "***at least*** 175 months' imprisonment" (CR-DE 103:35) (emphasis added). Thereafter, after considering the final PSI, the advisory guidelines, the objections and arguments from the parties, and the statutory factors set forth in 18 U.S.C. 3553(a), the district court sentenced the Movant to 235 months' imprisonment, comprised of 115 months for Counts 1 and 2, to be served concurrently, and 120 months for Count 2, to be served consecutively (*id.* at 48; CR-DE 88).

The district court was well within its discretion to sentence Movant as it did. In imposing the sentence, the district court noted, among other things, Movant's lengthy criminal history that began when he was twelve, his history of probation violations, multiple prior instances of Movant being released from incarceration only to almost immediately re-offend, and Movant's propensity for violence (CR-DE 103:48-49). Simply put, the district court's sentence did not constitute an abuse of discretion. Applying this highly deferential standard to the record, it is clear that appellate counsel competently and wisely decided he would be highly unlikely to succeed if he raised this sentencing issue on appeal. Movant's inability to prove prejudice prevents him from obtaining relief on this claim of ineffective assistance of counsel.

## NO HEARING REQUIRED FOR MOVANT'S CONCLUSORY ALLEGATIONS

Movant has the burden of establishing the need for an evidentiary hearing. *Birt v. Montgomery,* 725 F.2d 587, 591 (11th Cir. 1984) (*en banc*); *Schultz v. Wainwright,* 701 F.2d 900, 901 (11th Cir. 1983) (*per curiam*). A Movant is not entitled to a hearing, or entitled to prevail on a § 2255 petition, where Movant fails to present credible supporting evidence, other than his own allegations, to show he is entitled to relief. *Ferguson v. United States,* 699 F.2d 1071, 1072 (11th Cir. 1983). It is proper for a court to deny without a hearing a Movant's § 2255 petition that is based on conclusory allegations or unsupported generalizations. *Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004)(*per curiam*). A Movant "will not be entitled to an evidentiary hearing when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" *Stano v. Dugger,* 901 F.2d 898, 899 (11th Cir. 1990)(*en banc*); *quoting Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

## CONCLUSION

Wherefore, because none of Movant's four claims taken separately or as a whole constitute viable grounds for challenging his conviction or sentence, the Movant's § 2255 motion should be denied without a hearing.

    Respectfully submitted,
    ARIANA FAJARDO ORSHAN
    UNITED STATES ATTORNEY

By:    /s/ *Anne P. McNamara*
    ANNE P. MCNAMARA
    Assistant United States Attorney
    Court ID No. A5501847
    U.S. Attorney's Office
    99 N.E. 4th Street
    Miami, FL 33132-2111
    Telephone: (305) 961-9213
    Email: anne.mcnamara2@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 18, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also delivered the document by U.S. mail to Damaso Rivera Fonseca, Number 06407-104, Coleman Correctional Institution, P.O. Box 1033, Coleman, Florida 33521.

*s/ Anne P. McNamara*
Anne P. McNamara
Assistant United States Attorney