UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-25329-GAYLES/VALLE
(CASE NO. 15-CR-20802-GAYLES)

DAMASO RIVERA-FONSECA,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

**REPORT AND RECOMMENDATION TO DISTRICT JUDGE**

      This matter is before the Court on Movant Damaso Rivera-Fonseca's *pro se* Motion to Vacate Judgment and Sentence, filed pursuant to 28 U.S.C. § 2255 (the "Motion") (CV-ECF No. 1).[1]  United States District Judge Darrin Gayles has referred the Motion to the undersigned for a Report and Recommendation, pursuant to 28 U.S.C. § 636.  (CV-ECF No. 13).

      After due consideration of the Motion, the United States' Response (CV-ECF No. 10), Movant's Reply (CV-ECF No. 11), and all pertinent portions of the underlying criminal file, including trial transcripts and motions, the undersigned recommends that the Motion be **DENIED** without an evidentiary hearing.  *See Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (providing that an evidentiary hearing is not required whenever a movant asserts an ineffective assistance claim when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.") (quoting 28 U.S.C. § 2255); *see also Schriro v. Landrigan*, 550

---

[1] For ease of reference, any citations to the underlying criminal case, No. 15-CR-2802-GAYLES, will include "CR" preceding the docket number entry.  Citations to the civil docket for this Motion will have a "CV" preceding the docket number entry.

U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## I.     FACTUAL SUMMARY[2]

On October 5, 2015, Bridgette Newman ("Newman") entered a Walgreens store in Aventura, Florida, and warned the overnight manager that her boyfriend, later identified as Movant, was outside in a blue van with a big gun. (CV-ECF No. 1-1 at 9). Newman was fearful that Movant was going to come into the store, shoot up the place, and kill everyone. *Id.* As a result, the store manager called 911 and Aventura police officers were dispatched to the scene. *Id.* at 9-10.

Officer James Martin was the first to respond to the 911 call. (CR-ECF No. 98 at 231). Relevant to the instant Motion, Officer Martin saw Movant in the rear-most seat of the van, holding what appeared to be a rifle. *Id.* at 232-35, 240. Officer Martin ordered Movant out of the van and arrested him. *Id.* at 237. In addition, Officer Martin saw the stock of an AR-15 rifle, partially covered by clothing, in the rear seat of the van where Movant had been sitting. *Id.* at 240. Another officer, Officer Ricardo Moreno, also responded to the 911 call regarding a possible armed robbery at the Walgreens. (CR-ECF No. 99 at 28-29). Officer Moreno identified Movant as the man in the van, with what was later confirmed to be an AR-15 rifle. *Id.* at 32.

A subsequent inventory search of the van resulted in the seizure of: (i) an AR-15 rifle with a live round in the chamber; (ii) a 29-round magazine inserted in the rifle; (iii) an additional 28 rounds of ammunition; (iv) multiple cell phones; (v) a rifle case; (vi) approximately $800 in cash;

---

[2] This Factual Summary is substantially verbatim from *United States v. Fonseca*, 727 F. App'x. 985, 987-88 (11th Cir. 2018).

(vii) marijuana; (viii) large and small baggies; and (ix) a sugar container modified to conceal additional baggies. *Id.* at 37-51.

While Movant was being transported from the Aventura police Department to the Federal Detention Center in Miami, Movant voluntarily made several post-Miranda statements to ATF Special Agent Katherine Brady. *Id.* at 225-28. During the drive, Movant admitted to Agent Brady that the narcotics and the firearm found in the blue van belonged to him (not Newman). *Id.* at 227. Movant also told Agent Brady that he needed a gun for protection from enemies, and that he would rather be caught with a gun than be caught without one and be dead. *Id.* at 228. Relevant to the instant Motion, Movant told Agent Brady that he knew he was a felon and was not allowed to possess a firearm. *Id.* Finally, Movant stated that he had recently obtained this firearm on the street and that he would acquire another gun once he got out of prison. *Id.*

## II.     PROCEDURAL HISTORY

On October 15, 2015, a federal grand jury in the Southern District of Florida returned a three-count Indictment charging Movant with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g) (Count 1); possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). (CR-ECF No. 6).

At the pre-trial detention hearing, the Government sought to detain Movant as a risk of flight and a danger to the community. (CR-ECF No. 34 at 3). During the hearing, the Government proffered evidence and a law enforcement agent discussed the substantial evidence supporting the Government's application for detention. *Id.* at 3-9. Movant was present during the hearing.

(CR-ECF Nos. 3, 4).  Based on the evidence presented at the hearing, the Magistrate Judge detained Movant pending trial.  (CR-ECF No. 34 at 14-15); *see also* (CR-ECF No. 5).

Thereafter, the case was extensively litigated by both sides, including through substantial pre-trial motion practice.  Among other motions, on April 26, 2016, the District Court denied Movant's motion to suppress physical and testimonial evidence associated with his arrest.[3] (CR-ECF No. 97 at 118-22).  The District Court also denied Movant's motion *in limine* to exclude Newman's statements to the Walgreens manager, which had caused the manager to call the police. (CR-ECF No. 63); (CR-ECF No. 98 at 202-03, 208).  In addition, the record reflects that the Government offered Movant a plea deal, which Movant rejected and instead proceeded to trial. (CR-ECF No. 97 at 178); (CV-ECF No. 15-15).

During trial, the Government introduced a joint stipulation stating that Movant had been previously convicted of a felony and that he was not authorized "to own, possess, or use firearms." (CR-ECF No. 97 at 154-55); (CR-ECF No. 98 at 243).  Trial began on April 26, 2016.  After five days, the jury found Movant guilty on all three counts.  (CR-ECF No. 73).  At the conclusion of the trial, after the verdict had been announced and the jury dismissed, the District Court addressed Movant, remarking that "both sides did a good job on the case.  Mr. Fonseca, obviously, you are undoubtedly disappointed from the result but it wasn't from a lack of effort from your attorneys. I think both of them did a great job on your behalf."[4]  (CR-ECF No. 102 at 14-15).  The District Court also explained to Movant the process of preparing a presentence investigation report ("PSI"),

---

[3] The District Court found that Movant's arrest was lawful, the items in the van were properly seized, Newman's statements to the Walgreens manager would be admitted, and Movant's statements to ATF Agent Brady were freely and voluntarily made.  (CR-ECF No. 97 at 118); *see also* (CR-ECF No. 63).

[4] Movant was represented by two attorneys at trial:  Christopher DeCoste and Tara Kawass. (CR-ECF No. 98 at 3).  Movant asserts ineffectiveness only as to attorney DeCoste ("trial counsel").

reviewing it, and raising any objections and other motions prior to sentencing, which Movant said he understood. *Id.* at 13-14.

In advance of the scheduled sentencing, the United States Probation Office prepared a PSI, which detailed Movant's extensive criminal history, starting at age 12. *See* (CR-ECF No. 82 at 8-13 ¶¶ 27-34). Movant's criminal record included felony convictions for armed robbery, carjacking, being a delinquent in possession of a firearm, introducing a shank while in jail, and robbery by sudden snatching. *Id.* at 11-13 ¶¶ 32-35. Based on these felony convictions, Movant spent substantial time in jail, including ten years from March 27, 2005 until May 1, 2015. *Id.* at 12 ¶ 33. Moreover, as set forth in the PSI, at the time of his conviction in the instant case, Movant had a pending felony charge in Broward County, Florida, from a separate drug arrest just two days before the instant offense. *Id.* at 16-17 ¶ 43 (reflecting October 3, 2015 arrest). The PSI also included several sentencing enhancements, including a two-level upward adjustment for obstruction of justice.[5] *Id.* at 7 ¶ 22. Although Movant filed objections to the PSI, he did not object to the felon in possession conviction under *Rehaif v. United States*, 139 S. Ct. 2191 (2019). *See* (CR-ECF No. 80); *see also* (CR-ECF No. 82-1).

On August 1, 2016, after considering the final PSI, the advisory guideline range, the statutory factors in 18 U.S.C. § 3553(a), and objections and arguments from all parties, the District Court determined Movant's advisory guideline range offense at level 26 with a criminal history category of IV. (CR-ECF No. 103 at 34). Consequently, the Court determined Movant's advisory guideline range was 92 to 115 months' imprisonment on Counts 1 and 2, plus a mandatory minimum of 60 months' imprisonment on Count 3, to run consecutively. *Id.* at 34-35. During the

---

[5] The obstruction adjustment was based on a recorded jail call in which Movant directed Newman to remain quiet, say she blacked out, and not remember the events at Walgreens. (CR-ECF No. 82 at ¶ 22).

5

sentencing hearing, the Government recommended that the District Court sentence Movant to "at least 175 months' imprisonment." *Id.* at 35.  Ultimately, the District Court sentenced Movant to 235 months' imprisonment (115 months on Counts 1 and 2, to be served concurrently, and an additional 120 months on Count 3, to be served consecutively). *Id.* at 48; (CR-ECF No. 88).

Movant timely filed an appeal.  *See* (CR-ECF No. 89).  Thereafter, the Eleventh Circuit affirmed the judgment and conviction.  *See United States v. Fonseca*, 727 F. App'x 985 (11th Cir. March 2018), *reh'g denied*, 2018 U.S. App. LEXIS 25638 (11th Cir. Sept. 10, 2018); *see also* (CR-ECF No. 107).  Movant then filed a timely petition for certiorari in the Supreme Court, which the Supreme Court denied on January 7, 2019.  *See Fonseca v. United States*, 139 S. Ct. 846 (2019); *see also* (CR-ECF No. 108).  On December 30, 2019, Movant filed the instant Motion.[6]  Although the Government concedes the timeliness of the Motion, it opposes the Motion on procedural and substantive grounds.  *See generally* (CV-ECF No. 10).

In the Motion, Movant asserts three grounds for relief.  First, Movant challenges the constitutionality of his conviction as a felon in possession based on the Supreme Court's decision in *Rehaif*.  (CV-ECF No. 1 at 4); (CV-ECF No. 1-1 at 24-30).  Next, Movant argues that trial counsel provided ineffective assistance in failing to: (i) disclose the existence of a conflict of interest, (CV-ECF No. 1 at 5); (CV-ECF No. 1-1 at 30-35); and (ii) explain the strength of the Government's case and the effect of the Sentencing Guidelines, including possible upward variances[7], (CV-ECF No. 1 at 7); (CV-ECF No. 1-1 at 35-40).  Lastly, Movant argues that appellate counsel (Mark Clifford Katzef) was ineffective in failing to argue on appeal that the District Court

---

[6] Under the "prison mailbox rule," a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).

[7] Relatedly, Movant argues that the cumulative effect of trial counsel's errors requires an evidentiary hearing. (CV-ECF No. 1-1 at 40-42).

abused its discretion in sentencing Movant to a term of imprisonment greater than the sentence recommended by the Government and the PSI.  (CV-ECF No. 1 at 8); (CV-ECF No. 1-1 at 39-40). The Government opposes the Motion and the matter is ripe for review.

### III.    LEGAL STANDARD FOR HABEAS RELIEF

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).  Nonetheless, because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. *See United States v. Frady*, 456 U.S. 152, 165 (1982).

Section § 2255 allows a federal prisoner to move the sentencing court to vacate or set aside his sentence if: (i) its imposition violates the Constitution or laws of the United States; (ii) the sentencing court lacked jurisdiction; (iii) it exceeds the maximum authorized by law; or (iv) it is otherwise subject to collateral attack.   28 U.S.C. § 2255(a); *Samak v. Warden, FCC Coleman-Medium*, 766 F.3d 1271, 1278 (11th Cir. 2014) (Prior, J., concurring); *see McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011) (citing 28 U.S.C. § 2255(a)).  "[R]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citations and quotations omitted).  In turn, "miscarriage of justice" requires a showing that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Before determining whether a claim is cognizable, however, a district court must first determine whether the defendant asserted all available claims on direct appeal. *See Lynn*, 365 F.3d at 1232 (citing *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)). Next, the district court must consider whether the type of relief sought is appropriate under § 2255. *Id.* at 1232-33 (citations omitted). To obtain relief on collateral review, a movant must "clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166. Lastly, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro*, 550 U.S. at 474 (2007); *see Allen v. Fla. Dep't of Corr.*, 611 F.3d 740, 745 (11th Cir. 2010) (quoting *Schriro*, 550 U.S. at 474).

### IV.    ANALYSIS

Movant asserts three grounds for relief under § 2255: (i) that his conviction for felon in possession of a firearm under 18 U.S.C. § 922(g)(1) is invalid because the Indictment failed to allege, and the Government did not prove, that Movant knew his status as a felon, as required by *Rehaif* (CV-ECF No. 1 at 4); (ii) that his trial counsel was ineffective for (a) not disclosing counsel's alleged conflict of interest and (b) failing to adequately explain the application of the sentencing guidelines and the strength of the Government's case, *id.* at 5, 7; and (iii) that his appellate counsel was ineffective in failing to argue on appeal that the trial court abused its discretion in sentencing Movant to a term greater than the sentence recommended by the Government and the PSI, *id.* at 8. For the reasons discussed below, each claim should be denied.

### A.    Movant's *Rehaif* Claim Should be Denied as Procedurally Defaulted

After Movant's conviction became final, the Supreme Court issued its decision in *Rehaif v. United States*, holding that in a prosecution under § 922(g), the Government must prove that the defendant knew that he belonged to the class of persons (felons) who are prohibited from

8

possessing a firearm.   According to Movant, because neither the Indictment nor the jury instructions in his criminal case included the requisite knowledge-of-status element, the conduct alleged in the Indictment did not constitute a crime and his conviction is therefore constitutionally invalid.   *See generally* (CV-ECF No. 1-1 at 24-30).   In response, the Government argues that Movant's claim is procedurally defaulted.   (CV-ECF No. 10 at 5-8).

      *1. Movant's Rehaif Claim is Procedurally Defaulted*

Movant's first claim—that his conviction is invalid under *Rehaif*—is procedurally defaulted because he did not raise it on direct appeal.   "A claim not raised on direct appeal is procedurally defaulted unless the [movant] can establish cause and prejudice for his failure to assert his claims on direct appeal." *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001) (citation omitted).   "This rule generally applies to all claims, including constitutional claims." *Lynn*, 365 F.3d at 1234 (per curiam) (citations omitted).

"A [movant] can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule." *Id.*   "Under the first exception, a [movant] must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." *Id.* (citations omitted).   Under the second exception, the movant must show that he is "actually innocent." *Id.* at 1234-35 (citing cases).   "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousely v. United States*, 523 U.S. 614, 623 (1998) (citation and quotation omitted).   The burden to establish either of these two exceptions falls squarely on the Movant. *See Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015) (citing *LeCroy v. United States*, 739 F.3d 1297, 1321 (11th Cir. 2014)).

### a. *Movant Has Not Established Cause to Excuse his Default*

"The 'cause' excusing the procedural default must result from some objective factor external to the defense that prevented the prisoner from raising the claim and which cannot be fairly attributable to his own conduct." *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992) (per curiam) (citation omitted).  A movant may show cause "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel[.]"  *Reed v. Ross*, 468 U.S. 1, 16 (1984).  "In contrast, a claim is not novel when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel."  *United States v. Bane*, 948 F.3d 1290, 1297 (11th Cir. 2020) (citations omitted).

Movant argues that he can satisfy the "cause" prong of the first exception because *Rehaif* was decided after his conviction became final so that he could not have raised the *Rehaif* claim on direct appeal.  (CV-ECF No. 11 at 3).  Concededly, *Rehaif* reversed then-existing Eleventh Circuit precedent that a § 922(g) conviction did *not* require the defendant to have knowledge of his status as a convicted felon.  *See United States v. Jackson*, 120 F.3d 1226, 1229 (11th Cir. 1997) (per curiam), *abrogated by Rehaif*, 139 S. Ct. at 2200.  Thus, Movant argues that it was futile for him to raise this claim on direct appeal.  (CV-ECF No. 11 at 3).  But "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).  As other courts in this Circuit and District have found, because "the question presented in *Rehaif* has been thoroughly and repeatedly litigated in the courts of appeals for decades, . . . it does not qualify under the novelty exception" to the procedural default rule.  *Anderson v. United States*, No. 19-24903-CIV-MARTINEZ/LOUIS, 2020 WL 5803327, at *3 (S.D. Fla. Sept. 8, 2020),

10

*adopting report and recommendation*, 2020 WL 5801182 (S.D. Fla. Sep. 29, 2020); *see United States v. Lee*, No. 18-00249-KD-B, 2020 WL 5412981, at *4 (S.D. Ala. Sept. 8, 2020); *Dawkins v. United States*, Nos. 20-80987-CV-BLOOM, 17-80095-CR-BLOOM, 2020 WL 4936978, at *3 (S.D. Fla. Aug. 24, 2020) (finding movant's *Rehaif* claim not novel as the issue has been "repeatedly and thoroughly litigated in the courts of appeals for decades"); *Gayle v. United States*, No. 19-CV-62904-BLOOM/Reid, 2020 WL 4339359, at *4 (S.D. Fla. July 28, 2020) (finding knowledge-of-status requirement "routinely examined" and not novel); *Gilbert v. United States*, No. CV 119-178, 2020 WL 4210632, at *8 (S.D. Ga. June 23, 2020) (finding *Rehaif* claim to not be novel because "the building blocks for the claim were available"), *report and recommendation adopted*, 2020 WL 4208240 (S.D. Ga. July 22, 2020); *see also Bousley*, 523 U.S. at 622 (finding a claim was not novel because at the time of movant's plea, "the Federal Reporters were replete with cases" involving the same challenge)).  Accordingly, Movant has failed to establish "cause" for the procedural default.

> b. *Movant Has Not Established "Prejudice" or "Actual Innocence" to Excuse Default*

Even assuming that Movant could establish "cause" under the first exception, he cannot establish the "prejudice" prong of that exception.  Nor can Movant establish "actual innocence" to qualify for the second exception.

To establish prejudice, Movant must show that there is a reasonable probability that but for the error, his conviction or sentence would have been different.  *See Mincey v. Head*, 206 F.3d 1106, 1147 (11th Cir. 2000) (holding that the showing of prejudice necessary to overcome a procedural default is the same showing of prejudice required by *Strickland v. Washington*, 466 U.S. 668 (1984)).  Here, however, the record evidence unequivocally reflects that Movant was aware of his status as a convicted felon at the time he possessed the firearm.  First, Movant admitted

11

to Agent Brady that the narcotics and the firearm in the blue van belonged to him.  (CR-ECF No. 99 at 227).  Movant also told Agent Brady that he needed a gun for protection from enemies, and that he would rather be caught with a gun than be caught without one and be dead.  *Id.* at 228. Most importantly, Movant admitted to Agent Brady that he knew he was a felon and was not allowed to possess a firearm.  *Id.*  In addition, Movant stipulated in advance of trial that he was a felon and that he was unauthorized to own, possess, or use firearms.[8]  (CR-ECF No. 97 at 154-55); (CR-ECF No. 98 at 243); *see United States v. Elysee*, 993 F.3d 1309, 1346 (11th Cir. 2021) (noting that there was sufficient evidence on direct appeal to show that defendant knew his status as a felon, including defendant's statements and his stipulation that he was a convicted felon). Moreover, Movant did not object to being classified as a felon for purposes of § 922(g) either in writing, *see generally* (CR-ECF No. 80), or at the sentencing hearing, *see generally* (CR-ECF No. 103).  Lastly, Movant failed to argue that he would have presented evidence at trial that he did not know he was a felon.  *See, e.g., Greer v. United States*, 141 S. Ct. 2090, 2100 (2021) (finding that neither defendants (Greer or Gary) were entitled to a new trial or plea hearing unless they "ma[de] a sufficient argument or representation on [direct] appeal that [they] would have presented evidence at trial that [they] did not know [their status as] felon[s].").

---

[8] The Court specifically questioned Movant about the stipulation:

| | |
|---|---|
| Court: | So there is not a potential issue later, Mr. Rivera Fonseca, do you understand that your attorneys have told me that they are going to stipulate that you are, in fact, a convicted felon? |
| Defendant: | Yes, sir. |
| Court: | And you agree with that strategy in this case? |
| Defendant: | Yes, Your Honor. |

(CR-ECF No. 97 at 154-55).

Movant's argument that he lacked knowledge of his status as a felon is further belied by his extensive criminal history, which included multiple felony convictions in state court. *See* (CR-ECF No. 82 at 8-17 ¶¶ 27-44); *see also Greer,* 141 S. Ct. at 2097-98 (noting that "absent a reason to conclude otherwise, a jury will usually find that a defendant knew he was a felon based on the fact that he was a felon" and that "prior convictions are substantial evidence that they knew they were felons"); *United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir 2020) ("Convicted felons usually know they're convicted felons."). Here, only five months separated his most recent release from state custody (after a decade-long sentence) and his arrest on the instant charges. (CR-ECF No. 103 at 38); *see* (CR-ECF No. 82 at 2, 12 ¶ 33) (showing Movant's release date from state prison as May 1, 2015 and his arrest date on the instant offense as October 5, 2015); *see also United States v. Moore*, 954 F.3d 1322, 1337-38 (11th Cir. 2020) (analyzing facts that demonstrate a defendant's knowledge of felon status). Notably, one of Movant's prior felony convictions was for being a felon/delinquent in possession of a firearm in violation of Fla. Stat. § 790.23(1)(b).[9] (CR-ECF No. 82 at 12 ¶ 33).

Against this mountain of inculpatory evidence, including Movant's own post-arrest statements, Movant has failed to establish either "cause and prejudice" or "actual innocence" to excuse his procedural default. *See Bousley*, 523 U.S. at 622.

### 2. *The District Court Had Subject Matter Jurisdiction*

To the extent that Movant's argument may be construed as a jurisdictional challenge to his conviction, this claim also fails. *See* (CV-ECF No. 1 at 1-2); (CV-ECF No. 1-1 at 26-28). Unlike Movant's challenge based on *Rehaif*, challenges to a court's subject matter jurisdiction cannot be

---

[9] Florida law defines a delinquent in possession of a firearm as a person who was found to have committed a delinquent act that would be a felony if committed by an adult and such person is under 24 years of age. *See* Fla. Stat. § 790.23(1)(b).

waived or procedurally defaulted, and are addressed below.  *See United States v. Peter*, 310 F.3d 709, 712-13 (11th Cir. 2002) (per curiam).

In every federal criminal prosecution, "the district courts of the United States shall have original jurisdiction, exclusive of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231.  This standard is "not demanding."  *Moore*, 954 F.3d at 1332.  Indeed, to invoke federal subject matter jurisdiction, an indictment need only "charge[] the defendant with violating a valid federal statute[.]"  *United States v. Brown*, 752 F.3d 1344, 1354 (11th Cir. 2014) (citing *Alikhani v. United States*, 200 F.3d 732, 734-35 (11th Cir. 2000) (per curiam)).

Here, Movant's Indictment charged violations of 18 U.S.C. § 922(g)(1), 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 924(c)(1)(A).  (CR-ECF No. 6).  Although the Indictment did not allege the knowledge-of-status element, the text of § 922(g) contains no such requirement and case law is clear that "the omission of a mens rea element from an indictment does not divest the district court of subject matter jurisdiction to adjudicate a criminal case."  *United States v. Stokeling*, 798 F. App'x 443, 446 (11th Cir. 2020) (per curiam) (citation omitted), *cert. denied*, -- S. Ct. --, 2021 WL 2519183 (Mem) (June 21, 2021); *see United States v. Morales*, 987 F.3d 966, 979 (11th Cir. 2021) ("We read *Rehaif* to have interpreted § 922(g) itself as including a knowledge-of-status element, not as having held that § 922(g) is a non-criminal provision that § 924(a)(2) incorporates to create a criminal offense." (citation omitted)).  "Reading this knowledge requirement into the statute while also holding that indictments tracking the statute's text are insufficient would be incongruous."  *Moore*, 954 F.3d at 1333.  Further, "defects in an indictment do not deprive a court of its power to adjudicate a case."  *United States v. Cotton*, 535 U.S. 625, 630 (2002).  Rather, "[a] jurisdictional defect occurs only where a federal court lacks power to adjudicate at all."  *United States v. Sanchez*, 269 F.3d 1250, 1273 (11th Cir. 2001) (en banc) (citation omitted), *abrogated*

14

*on other grounds by United States v. Duncan*, 400 F.3d 1297, 1308 (11th Cir. 2005).  That is simply not the case here.  *See Moore*, 954 F.3d at 1333 ("Although the government may be well advised to include such mens rea allegations in future indictments, that language is not required to establish jurisdiction.").  Thus, any jurisdictional challenge is meritless.

**B.     Movant Has Failed to Show that Counsel was Ineffective**

Movant next argues that trial counsel and appellate counsel both rendered ineffective assistance, in violation of the Sixth Amendment to the United States Constitution.  To prevail on a claim of ineffective assistance of counsel, Movant must establish: (i) that his attorney's performance was constitutionally deficient; and (2) that he was prejudiced by the attorney's inadequate performance.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Both prongs must be established.

In analyzing the performance prong of *Strickland*, courts must avoid second-guessing counsel's performance with the benefit of hindsight and must presume that the performance was reasonable and adequate.  *Strickland*, 466 U.S. at 689.  For that reason, "[j]udicial scrutiny of counsel's performance must be highly deferential[,]" and begins with "a strong presumption" that counsel performed reasonably and adequately.  *Id.*; *see Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007); *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994), 13 F.3d at 386.  Accordingly, the test for the adequacy of counsel's performance focuses not on what "the best" or even "most good lawyers" would have done, but "only whether some reasonable lawyer. . . could have acted, in the circumstances, as defense counsel acted at trial."  *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992).  Moreover, any "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *Strickland*, 466 U.S. at 690, especially those about "[w]hich witnesses, if any, to call, and when to

call them, [a]s [that is] the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters v. Thoma*s, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc); *see Dingle*, 480 F.3d at 1099 ("[W]e give great deference to choices dictated by reasonable strategy," including counsel's "tactical decision not to present expert testimony.").

The *Strickland* prejudice prong is established only when Movant shows a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 at 694. "This burden, which is petitioner's to bear, is and is supposed to be a heavy one," so that "cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers*, 13 F.3d at 386. Moreover, because both prongs of the *Strickland* test must be established, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." *Strickland*, 477 U.S. at 697; *see Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Waters*, 46 F.3d at 1510.

### 1. *Trial Counsel's Alleged Conflict of Interest*

First, Movant alleges that trial counsel labored under an undisclosed conflict of interest, which rendered his performance ineffective. (CV-ECF No. 1 at 5); *see* (CV-ECF No. 1-1 at 30-35). More specifically, Movant alleges that trial counsel was retained and paid by Newman, who was listed as a Government witness and whose testimony was purportedly "crucial for the defense." (CV-ECF No. 1 at 5); *see* (CV-ECF No. 1-1 at 33 (citing CR-ECF No. 103 at 27)). According to Movant, Newman was available and willing to testify that she was the owner of the firearm found in the van, but trial counsel did not call her as witness because of his loyalty to Newman and to avoid having to disclose that Newman was paying his fees. (CV-ECF No. 1-1 at 22, 33-34). Contrary to his argument that Newman's testimony was "crucial for the defense," Movant also

16

asserts that "Newman was critical for the government (in fact was listed as a witness) . . . since she was the initial person that entered the Walgreens making the compalints that [Movant] was about to enter and shoot everyone inside." (CV-ECF No. 1-1 at 33). These contradictions undermine Movant's claim of an actual conflict.

To prevail on a claim of ineffective assistance based on a conflict, Movant must establish that an "actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "[T]he mere possibility of a conflict 'is insufficient to impugn a criminal conviction.'" *Burden v. Zant*, 24 F.3d 1298, 1305 (11th Cir. 1994) (quoting *Cuyler*, 446 U.S. at 350). Here, however, Movant's claimed conflict is wholly speculative and unsupported by the evidence. Moreover, even assuming that an actual conflict existed, Movant cannot show that it adversely affected his lawyer's performance.

In an affidavit filed in support of the Motion, Movant asserts that "it is unknown" why his counsel did not call Newman as a witness, "although she was paying his fees." (CV-ECF No. 1-1 at 44 ¶ 10). Movant states that "[i]t was never explained to [him] that by Newman paying [trial counsel's fees,] there was a conflict." *Id.* at ¶ 12. Other than this self-serving statement in the affidavit, the record is devoid of any evidence to support Movant's speculation that counsel did not call Newman to conceal their financial arrangement.[10] But Movant cannot meet his burden of establishing an actual conflict with mere speculation, even if it comes in the form of an affidavit. *See, e.g., Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that conclusory

---

[10] Relatedly, Movant implies that counsel may have represented Newman on a related state drug matter. (CV-ECF No. 1-1 at 43 ¶ 6). But the publicly available state court docket reflects that Newman was represented by a public defender, not Mr. DeCoste. (CV-ECF No. 15-17) (Miami Dade Court Case No. F-15-020641). The record also reflects that Newman was represented by another attorney (not Mr. DeCoste) in the underlying federal criminal case. *See* (CR-ECF No. 100 at 9-10); (CR-ECF No. 103 at 27-29).

statements are insufficient to state a claim for ineffective assistance of counsel on collateral review). Lastly, "the payment of fees by a third party does not automatically rise to the level of a conflict of interest." *United States v. Tobon-Hernandez*, 845 F.2d 277, 281 (11th Cir. 1988).

In addition to Movant's failure to make a prima facie showing of actual conflict, the record reveals that counsel's decision not to call Newman as a defense witness was a sound strategic decision. *See Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (stating that "strong reluctance to second guess strategic decisions is even greater where those decisions were made by experienced criminal defense counsel" and that "[t]he more experienced an attorney is, the more likely it is that his decision to rely on his own experience and judgment in rejecting a defense" is reasonable). Trial counsel retains control over strategic choices, such as whether to call someone as a defense witness. *See Blanco v. Singletary*, 943 F.2d 1477, 1495 n.72 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *Strickland*, 466 U.S. at 690, especially those about "[w]hich witnesses, if any, to call, and when to call them, [a]s [that is] the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters*, 46 F.3d at 1512; *see Dingle*, 480 F.3d at 1099 ("[W]e give great deference to choices dictated by reasonable strategy," including counsel's "tactical decision not to present expert testimony.").

Lastly, counsel's strategic decision not to call Newman as a defense witness was reasonable and adequate. First, Newman was listed as a Government witness so her testimony for the defense was, at best, a double-edge sword. Second, counsel advised the Court that he had spoken with Newman's attorney, who told counsel that Newman would invoke her Fifth Amendment right against self-incrimination if called to testify. (CR-ECF No. 100 at 9-10). Third, Newman had

18

been subpoenaed as a Government witness, but ultimately failed to appear.  (CR-ECF No. 103 at 27-29).  Fourth, the Government possessed a recorded jail call in which Movant tried to persuade Newman to stay quiet and say she blacked out and did not remember what happened at Walgreens.  (CR-ECF No. 83-2 at 6-8, 14-15).  Fifth, it was Newman's inculpatory statements to the night manager at Walgreens that led to Movant's arrest.  (CR-ECF No. 98 at 203-05).  Lastly, part of counsel's defense strategy was to point the finger at Newman, so it was reasonable for counsel not to call her and to avoid subjecting her to cross-examination about the obstruction or the fact that she was living with Movant's family.  *See, e.g.,* (CR-ECF No. 98 at 194-95).

Against this legal and factual backdrop, counsel's decision not to call Newman as a witness was a reasonable, strategic choice, which is virtually unchallengeable.  *Strickland*, 466 U.S. at 690.  Thus, Movant has failed to establish deficient performance and prejudice under *Strickland*.  Because the record is clear on this issue, no evidentiary hearing is required.

### 2.  Trial Counsel's Alleged Failure to Discuss the Government's Case and Guidelines

Next, Movant argues that trial counsel failed to adequately explain the strength of the Government's case and the possible implications of the Sentencing Guidelines.  (CV-ECF No. 1 at 7); (CV-ECF No. 1-1 at 35-40).  According to Movant, after the Court denied his motion to suppress, which he describes as "the most critical portion of the defense," counsel did not explain "the strength of the [G]overnment's case, the sentencing guidelines, upward departures, and how acceptance of responsibility could be used to mitigate the final sentence," effectively rendering Movant's decision to proceed to trial "involuntary."  (CV-ECF No. 1-1 at 36, 37).  Movant further argues that counsel was aware of Movant's "extensive learning disabilities," which "warranted special care in explaining the case, its strength and the possibilities of resolving the case without a trial."  *Id.* at 37-38.  Movant summarily concludes that, "[h]ad a thorough explanation been

[provided to him], [he] would not have proceeded to trial." *Id*. at 38. Lastly, Movant requests an evidentiary hearing to show that "a lack of information from counsel" led to his decision to proceed to trial. *Id.*

Negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel. *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). The *Strickland* framework applies to advice regarding whether to plead guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *see Premo v. Moore*, 562 U.S. 115, 126 (2011); *Padilla*, 559 U.S. at 364 ("Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." (citations omitted)). In the context of a plea, the analysis of *Strickland*'s performance prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. To meet the prejudice prong, a movant must show that there is a reasonable probability that, but for counsel's errors, he would have "pleaded guilty and not insisted on going to trial." *Rosin v. United States*, 786 F.3d 873, 878 (11th Cir. 2015) (citing *Hill*, 474 U.S. at 59); *see Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (per curiam). A movant's "after the fact testimony concerning his desire to plea, without more, is insufficient to establish" that he was prejudiced by "counsel's alleged advice or inaction." *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991); *see Cook v. United States*, 189 F. App'x. 927, 931 (11th Cir. 2006) (per curiam). Rather, some "objective evidence of a movant's pre-conviction willingness to plead guilty" is required to support such a claim. *Willner v. United States*, 16-24459-CV-SEITZ, 2018 WL 9815445, at *24 (S.D. Fla. Dec. 18, 2018) (quoting *Etheridge v. United States*, No. 04-21090-CIV, 2011 WL 817915, at *6

20

(S.D. Fla.Mar. 2, 2011)), *report and recommendation adopted*, 2019 WL 5104509 (S.D. Fla.

Mar. 29, 2019); *see Rosin*, 786 F.3d at 878.  Thus, a movant "cannot show prejudice if he offers

no evidence that he would have accepted a plea offer absent his lawyer's errors." *Glover v. United*

*States*, 522 F. App'x 720, 723 (11th Cir. 2013) (citing *Coulter*, 60 F.3d at 1504).

Here, Movant does not contend that counsel failed to advise him of the plea or that the

offer lapsed.  Indeed, Movant and counsel acknowledged that they had received, reviewed, and

rejected the Government's plea offer.  (CV-ECF No. 10 at 12) (citing to CR-ECF No. 11 at 3-4

¶ 11) (Order Setting Trial Date); (CV-ECF No. 15-15).  In addition, at the conclusion of the

suppression hearing, counsel confirmed on the record that Movant had rejected the Government's

offer, stating, "One final thing, we have the recognition of compliance with your trial order,

number 11, which is rejection of the plea . . . requesting us to sign documentation for rejection of

the plea, we do have that."  (CR-ECF No. 97 at 178); *see* (CV-ECF No. 15-15).  Instead, Movant

asserts that counsel "never explained the strength of the [G]overnment's case, the guidelines,

sentence enhancements, nor upward departures," and this led to his decision to go to trial.[11]

(CV-ECF No. 1-1 at 45 ¶ 15).  Yet, despite this assertion, Movant acknowledges that the

Government gave a "detailed explanation" of its case (including "all the witnesses, the 911 calls,

videos and transcripts") following the denial of the motion to suppress.  (CV-ECF No. 1-1 at 37);

*see* (CR-ECF No. 98 at 10).  Accordingly, Movant knew that the evidence against him included,

among other things:  (i) Movant's confession to Agent Brady that the rifle found in the van was

his and that he was a convicted felon and could not possess a firearm; (ii) the items seized from

the van, including an AR-15 rifle, sixty-eight rounds of ammunition, fifty-two grams of marijuana,

---

[11] The undersigned notes Movant's contradictory statement in the affidavit that his decision to proceed to trial was "in error and guided by [counsel] *and* Newman."  (CV-ECF No. 1-1 at 46 ¶ 23) (emphasis added).

twenty-three grams of cocaine, other drug paraphernalia, and approximately $800 in cash; (iii) Newman's statements to the Walgreens manager; and (iv) a recorded call between him and Newman in which he asked Newman to say she blacked out and could not to recall the events. The record also reflects Movant's awareness of his sentencing exposure. (CR-ECF No. 34 at 11); *but cf. Theus v. Buss*, No. 08-CV-42-MP-CJK, 2012 WL 527539, at *7 (N.D. Fla. Feb. 17, 2012) (granting evidentiary hearing to develop record as to what movant was told about his sentence exposure). For example, at the detention hearing, the Government reviewed the evidence and possible sentence, stating, "The evidence in this case is overwhelming and [Movant is] facing a significant sentence of approximately 210 to 262 months." (CR-ECF No. 34 at 11); *see also id.* at 14. In a recorded telephone conversation the next day, Movant commented on the seriousness of his potential sentence:

> These people [U/I]—as soon as I walked into the courtroom the government already talking about holding him behind. You facing twenty years right now. You feel me? I'm like [expletive], what the [expletive]? Hey, I supposed I got a bond, they ain't even did that. They didn't tell—they denied everything on me.

(CR-ECF No. 83-2 at 18).

Under these circumstances, Movant's self-serving and conclusory allegations do not warrant an evidentiary hearing, much less relief from conviction. Movant has failed to show either that his trial counsel's performance was deficient or that he was prejudiced. *See Diaz*, 930 F.2d at 835; *Teers v. United States*, 739 F. App'x 960, 966 (11th Cir. 2018) (per curiam) ("[T]he District court did not abuse its discretion in denying [movant's] § 2255 motion without an evidentiary hearing because the record conclusively demonstrates that he is entitled to no relief." (citing 28 U.S.C. § 2255(b))); *Willner*, 2018 WL 9815445, at *25 ("[I]n light of the record before this court, the movant's conclusory representation here does not warrant an evidentiary hearing[.]"); *Gonzalez v. United States*, No. 10-CV-188-Orl-22KRS, 2012 WL 13093249, at *4 (M.D. Fla. Feb.

22

8, 2012) (finding no evidentiary hearing required where nothing in record suggested movant asked trial counsel to pursue a plea but was told that a plea was not in his best interests); *Rosin v. United States*, Nos. 09-CV-1158-T-24MAP, 05-CR-143-T-24MAP, 2013 WL 6231272, at \*5 (M.D. Fla. Dec. 2, 2013) (citing cases), *aff'd*, 786 F.3d 873 (11th Cir. 2015).

   3.   *Appellate Counsel's Alleged Failure to Raise Issue on Appeal*

Lastly, Movant argues that his appellate counsel was ineffective for failing to appeal the District Court's decision to impose a sentence greater than what the Government and the PSI had recommended.  (CV-ECF No. 1 at 8); (CV-ECF No. 1-1 at 39-40).  More specifically, Movant argues that appellate counsel was ineffective in that counsel "was aware that [Movant] wanted to appeal all aspects of [the] case," including that: (i) the District Court's sentence of 235 months' imprisonment violated the factors in 18 U.S.C. § 3553; and (ii) the District Court abused its discretion when it sentenced Movant to a sentence that was "60 months above the guidelines and the [G]overnment's recommendation."  (CV-ECF No. 1-1 at 40, 46).

Claims of ineffective assistance of appellate counsel are also governed by the standards in *Strickland*.  *See Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009).  Initially, Movant concedes that "[t]he failure to raise an issue that is without merit 'does not constitute constitutionally ineffective assistance of counsel.'"  (CV-ECF No. 1-1 at 39).  Movant also concedes that appellate counsel is not required to raise every non-frivolous issue and may sift out weaker ones to present the strategically strongest case on appeal. *Id.* (citations omitted); *see Smith v. Murray*, 477 U.S. 527, 536 (1986); *see also Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).  Nonetheless, Movant argues that this issue had merit and "would have most likely resulted on a remand for resentencing."  (CV-ECF No. 1-1 at 40).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel

23

be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Movant has not overcome that presumption.

Movant's argument that the "upward variance was an error," which likely would have resulted in remand on appeal, is unsupported by the record and without merit.  First, contrary to Movant's assertions, the Government recommended a sentence of "*at least* 175 months." (CR-ECF No. 103 at 35) (emphasis added).  Second, the sentence was below the statutory maximum.  (CR-ECF No. 82 at 23 ¶ 77).  Third, the Eleventh Circuit reviews the reasonableness of a sentence for abuse of discretion, and Movant has not shown how the District Court purportedly abused its discretion.  *See United States v. Irey*, 612 F.3d 1160, 1165 (11th Cir. 2010) (en banc) (recognizing that substantive review of sentences is deferential and that appellate courts "only look to see if the district court abused its discretion" in rendering its sentencing decision).

Moreover, in reviewing the reasonableness of the sentence, the Eleventh Circuit considers: (i) whether the district court committed a "significant procedural error;" and (ii) whether the sentence was "substantively reasonable under the totality of the circumstances."  *United States v. Overstreet*, 713 F.3d 627, 636 (11th Cir. 2013) (quoting *United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010) (per curiam)); *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010) ("To be upheld on appeal, a sentence must be both procedurally and substantively reasonable.").  A sentence can be procedurally unreasonable if the District Court improperly calculated the guideline range, failed to consider the 18 U.S.C. § 3553(a) factors, failed to adequately explain the sentence, or selected a sentence based on clearly erroneous facts.  *See Gall v. United States*, 552 U.S. 38, 51 (2007).  None of these sentencing errors are implicated here.

Furthermore, in pronouncing the sentence, "the sentencing court need only set forth enough to demonstrate that it 'considered the parties' arguments and ha[d] a reasoned basis for exercising

24

[its] . . . decisionmaking authority.'" *United States v. Green*, 981 F.3d 945, 953 (11th Cir. 2020) (alterations in original) (quoting *United States v. Carpenter*, 803 F.3d 1224, 1232 (11th Cir. 2015)). The District Court did so here. (CR-ECF No. 103 at 47-49). The District Court noted, for example, Movant's lengthy criminal history, Movant's history of violating probation, multiple prior instances of reoffending shortly after being released from custody, and Movant's propensity for violence. *Id.* Given the Court's detailed findings, it would have been highly unlikely that the Eleventh Circuit would have ruled in Movant's favor.[12] Thus, Movant has also failed to show prejudice. Accordingly, this claim should be denied.[13]

## V.     CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the undersigned finds that Movant procedurally defaulted on the *Rehaif* claim and failed to carry his burden of showing deficient performance and resulting prejudice under *Strickland* on his claims of ineffective assistance of counsel. Accordingly, the undersigned respectfully **RECOMMENDS** that:

(i)      the Motion be **DENIED** without an evidentiary hearing;

(ii)      a Certificate of Appealability not be granted because reasonable jurists would not find the denial to be debatable and Movant has not made a substantial showing of the denial of a constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also* 28 U.S.C. § 2253(c)(2).

---

[12] The Eleventh Circuit reviews such findings for clear error, overturning a finding only if a review of the evidence leaves the court with "a definite and firm conviction a mistake has been made." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015).

[13] Movant's one-line argument that the District Court violated the § 3553(a) factors is similarly without merit. (CV-ECF No. 1-1 at 40). At the sentencing hearing, the District Court properly considered the statutory factors in imposing the sentence. (CR-ECF No. 103 at 47-49).

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the above findings and recommendations as provided by the Local Rules for this District. *See* 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140, 149 (1985).

**DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida, on July 21, 2021.

ALICIA O. VALLE
UNITED STATES MAGSITRATE JUDGE

cc:     **Damaso Rivera-Fonseca**
        06407-104
        Coleman I-USP
        United States Penitentiary
        Inmate Mail/Parcels
        Post Office Box 1033
        Coleman, FL 33521
        *PRO SE*

        **Noticing 2255 US Attorney**
        Email: usafls-2255@usdoj.gov

        **Anne McNamara, Esq.**
        U.S. Attorney's Office
        99 NE 4th Street
        Miami, FL 33132
        Email: anne.mcnamara2@usdoj.gov